# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SARA HAIDEE ALEMAN MEDRANO, *et. al.*,

                              Plaintiffs,

v.

CHARLES A. JENKINS, *et. al.*,

                              Defendants.

Civil Action No.: 1:19-cv-02038-RDB

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
# TO DISMISS OR, IN THE ALTERNATIVE, TO BIFURCATE

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................. 3

LEGAL STANDARD......................................................................................... 7

I.      This Court has personal jurisdiction over all of the named Defendants ...................... 9

II.     Plaintiffs allege a plausible claim against Sheriff Jenkins in his personal capacity ... 10

III.    Plaintiffs allege plausible *Monell* claims under their first and second causes of action
        for violations of Plaintiffs' constitutional rights ........................................................ 13

        A.      Plaintiffs allege plausible claims against Deputies Mothershead and Barrera in
                their official capacities for violation of Ms. Medrano's constitutional rights . 14

        B.      Based on facts in their Complaint, Plaintiffs allege multiple plausible theories
                for *Monell* liability .......................................................................................... 14

                1.      Sheriff Jenkins implemented and adhered to a formal or written policy
                        that caused the harm Plaintiffs allege in their Complaint ................... 15

                2.      Sheriff Jenkins established a pattern, practice, or custom of unlawful
                        immigration enforcement and discrimination against Latinx
                        individuals, causing the harm Plaintiffs allege in their Complaint ..... 15

                3.      Sheriff Jenkins failed to train his patrol deputies, including Deputies
                        Mothershead and Barrera, not to engage in immigration enforcement,
                        directly causing the harms Plaintiffs allege in their Complaint .......... 16

        C.      Plaintiffs properly allege causation as part of their *Monell* claims................. 17

        D.      Defendants mischaracterize the relevance of the 287(g) program to Plaintiffs'
                claims ............................................................................................................... 18

        E.      The allegations in Plaintiffs' Complaint about the experiences of Mr. A. G.
                are tied to the policies, practices, or customs alleged in the Complaint ......... 20

        F.      Plaintiffs' allegations regarding Sheriff Jenkins' outspoken animus toward
                immigrants reinforce Plaintiffs' *Monell* claims ............................................. 21

IV.     Plaintiffs properly identified Frederick County and the FCSO as Defendants........... 22

        A.      Plaintiffs properly identified the FCSO as a Defendant in their Title VI claim
                ........................................................................................................................... 22

B.     Plaintiffs properly identified Frederick County as a Defendant in all of their claims ................................................................................................................. 24

V.     Defendants' challenge to the standing of the RISE Coalition should be rejected at this early stage of proceedings ........................................................................................... 25

A.     Defendants' challenge to the standing of the RISE Coalition fails because Ms. Medrano has standing to sue ......................................................................... 26

B.     The RISE Coalition has adequately alleged associational standing to sue on behalf of its members ..................................................................................... 26

VI.     Defendants have not satisfied their burden of showing that bifurcation is appropriate in this case ....................................................................................................................... 28

A.     Bifurcation is inappropriate because Plaintiffs allege non-derivative claims against Frederick County and the FCSO based on Title VI............................ 29

B.     Bifurcation will harm Plaintiffs, prolong litigation, and waste resources of the parties and the Court ..................................................................................... 31

1.     Bifurcation at this stage would jeopardize Plaintiffs' ability to properly investigate and prove their claims....................................................... 32

2.     Bifurcation would complicate discovery, prolong it, and cause duplication of efforts due to the extent of overlap among the Plaintiffs' claims ................................................................................................ 33

CONCLUSION ..................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abunaw v. Prince George's Corrections Dep't,*
No. 13-2746, 2014 U.S. Dist. LEXIS 99903 (D. Md. Jul. 23, 2014) ....................................24

*Afshar v. City of Sacramento,*
No. 04-1088, 2007 WL 779748 (E.D. Cal. Mar. 14, 2007) ......................................................8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................................8

*Baynard v. Malone,*
268 F.3d 228 (4th Cir. 2001) ...........................................................................................11, 31

*Bishop v. Lewis,*
No. 10-3640, 2011 U.S. Dist. LEXIS 48040 (D. Md. May 4, 2011) ....................................23

*Bostic v. Shaefer,*
760 F.3d 352 (4th Cir. 2014) ................................................................................................26

*Burgos v. City of Philadelphia,*
270 F. Supp. 3d 788 (E.D. Pa. 2017) .....................................................................................12

*Illinois v. Caballes,*
543 U.S. 405 (2005) ..............................................................................................................21

*Cahill v. Live Nation,*
866 F. Supp. 2d 503 (W.D. Pa. 2011) ....................................................................................12

*Clements v. Prince George's County,*
No. 90-1878, 1992 WL 165814 (D. Md. June 30, 1992) ...................................................29, 33

*Cricket Grp., Ltd. v. Highmark, Inc.,*
198 F. Supp. 3d 540 (D. Md. 2016) ........................................................................................7

*Crystal v. Batts,*
No. 14-3989, 2015 WL 8137660 (D. Md. Dec. 8, 2015) ...................................................30, 34

*Cunningham v. Gates,*
No. 96-2666, 2006 WL 2294877 (C.D. Cal. Aug. 2, 2006) .....................................................33

*Davison v. Randall,*
912 F.3d 666 (4th Cir. 2019) ................................................................................................10

*Deocampo v. City of Vallejo,*
  No. 06-01283, 2007 WL 161452 (E.D. Cal. June 4, 2007) ...............................................29, 32

*Edwards v. City of Goldsboro,*
  178 F.3d 231 (4th Cir. 1999) ..........................................................................................7

*Fall v. Indiana Univ. Bd. of Trustees,*
  33 F. Supp. 2d 729 (N.D. Ind. 1998) ................................................................................30

*Farmer v. Ramsay,*
  41 F. Supp. 2d 587 (D. Md. 1999) ...............................................................................11, 23

*Kentucky v. Graham,*
  473 U.S. 159 (1985)..................................................................................................10, 12

*Hispanic Nat'l Law Enforcement Ass'n NCR v. Prince George's County,*
  No. 18-3821, 2019 WL 2929025 (D. Md. Jul. 8, 2019) .......................................................25

*Hoffman v. Balt. Police Dep't,*
  379 F. Supp. 2d 778 (D. Md. 2005) ..................................................................................25

*Hollingsworth v. Perry,*
  133 S. Ct. 2652 (2013)...................................................................................................25

*Hunt v. Washington State Apple Advertising Comm'n,*
  432 U.S. 343 (1977)......................................................................................................27

*Int'l Shoe v. Washington,*
  326 U.S. 310 (1945)........................................................................................................9

*Int'l Union, United Automobile Workers v. Brock,*
  477 U.S. 274 (1986).......................................................................................................27

*Int'l Woodworkers v. Chesapeake Bay Plywood,*
  659 F.2d 1259 (4th Cir. 1983) .........................................................................................27

*Johnson v. City of Shelby,*
  135 S. Ct. 346 (2014).......................................................................................................8

*King v. Jefferies,*
  402 F. Supp. 2d 624 (M.D.N.C. 2005) ...............................................................................17

*Kitchings v. Anne Arundel County Bd. of Educ.,*
  No. 02-0727, 2002 WL 31720746 (D. Md. Dec. 3, 2002)......................................................23

*La Union Del Pueblo Entero v. Ross,*
  353 F. Supp. 3d 381 (D. Md. 2018) ..................................................................................26

*LaPier v. Prince George's County*,
No. 10-2851, 2011 U.S. Dist. LEXIS 109625 (D. Md. Sept. 27, 2011) ............................23, 24

*Larez v. Los Angeles*,
946 F.2d 630 (9th Cir. 1991) ................................................................................................13

*Maddux v. Officer One*,
90 F. Appx. 754 (5th Cir. 2004).............................................................................................15

*United States v. Maricopa County*,
915 F. Supp. 2d 1073 (D. Ariz. 2012) ...................................................................................24

*Marryshow v. Bladensburg*,
139 F.R.D. 318 (D. Md. 1991).................................................................................................9

*Martinez v Robinson*,
No. 99-11911, 2002 WL 424680 (S.D.N.Y. Mar. 19, 2002)..................................................29

*Maryland State Conference of NAACP Branches v. Dep't of Maryland State Police*,
No. 98-1098 (D. Md. October 28, 2003) ...............................................................................30

*Md. State Conf. of NAACP Branches v. Md. State Police*,
454 F. Supp. 2d 339 (D. Md. 2006) .......................................................................................21

*Monaghan v. SZS 33 Assocs., L.P.*,
827 F. Supp. 233 (S.D.N.Y. 1993) .........................................................................................29

*Monell v. New York City Dep't of Social Servs.*,
436 U.S. 658 (1978).................................................................................................1, 15, 16

*Morris v. Bland*,
666 Fed. Appx. 233 (4th Cir. 2016).......................................................................................12

*Murphy-Taylor v. Hofmann*,
968 F. Supp. 2d 693 (D. Md. 2013) .......................................................................................31

*NAACP v. Alabama*,
357 U.S. 449 (1958)................................................................................................................27

*Owens v. Baltimore City State's Atty's Office*,
767 F.3d 379 (4th Cir. 2014) ...........................................................................................8, 15

*Owensby v. Cincinnati*,
385 F. Supp. 2d 626 (S.D. Ohio 2004) ...............................................................................9, 32

*Pavone v. Gibbs*,
No. CV 95-0033, 1997 WL 833472 (E.D.N.Y. Sept. 29, 1997)............................................29

*Peick v. Pension Benefit Guaranty Corp.*,
   724 F.2d 1247 (7th Cir. 1983) ................................................................27

*Potts v. Moreci*,
   12 F. Supp. 3d 1065 (N.D. Ill. 2013) ....................................................12

*United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,
   793 F. Supp. 1114 (E.D.N.Y. 1992) ......................................................33

*Revene v. Charles County Comm'rs*,
   882 F.2d 870 (4th Cir. 1989) ................................................................22

*Rosa v. Hartford*,
   No. 3:00CV1367, 2005 WL 752206 (D. Conn. Mar. 31, 2005) ............29

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
   547 U.S. 47 (2006) ................................................................................26

*Santos v. Frederick County Bd. of Comm'rs*,
   346 F. Supp. 3d 785 (D. Md. 2018) ............................................. *passim*

*Santos v. Frederick County Bd. of Comm'rs*,
   725 F.3d 451 (4th Cir. 2013) ...................................................... *passim*

*Santos v. Frederick County Bd. of Comm'rs*,
   No. 09-2978, 2015 U.S. Dist. LEXIS 113776 (D. Md. Aug. 26, 2015) ............................31, 32

*Santos v. Frederick County Bd. of Comm'rs*,
   No. 09-2978, 2016 U.S. Dist. LEXIS 78347 (D. Md. June 16, 2016)........................18, 22, 31

*Santos v. Frederick County Bd. of Comm'rs*,
   No. 09-2978, 2017 U.S. Dist. LEXIS 600 (D. Md. Jan. 4, 2017)............................................31

*Schmidt v. Town of Cheverly*,
   212 F. Supp. 3d 573 (D. Md. 2016) ......................................................25

*Schoolcraft v City of New York*,
   No. 10-6005, 2015 WL 5542770 (S.D.N.Y. Sept. 18, 2015) ................35

*Sharp v. City of Houston*,
   164 F.3d 923 (5th Cir. 1999) ................................................................16

*Shaw v. Stroud*,
   13 F.3d 791 (4th Cir. 1994) ...........................................................10, 11

*Smith v. Wade*,
   461 U.S. 30 (1982) ................................................................................12

*Tardiff v. Knox County*,
    425 F. Supp. 2d 159 (D. Me. 2006) .................................................................15

*Treadwell v. Prince George's County Health Dep't*,
    No. 13-0063, 2014 WL 3534006 (D. Md. Jul. 14, 2014) ...................................30, 34

*Arizona v. United States*,
    567 U.S. 387 (2012)..........................................................................................21

*Warth v. Seldin*,
    422 U.S. .............................................................................................................27

*Watson v. City of Kansas City*,
    857 F.2d 690 (10th Cir. 1988) ...........................................................................16

*Wiley v. Mayor and City Council of Baltimore*,
    48 F.3d 773 (4th Cir. 1995) ................................................................................28

**State Cases**

*Khawaja v. Rockville*,
    598 A.2d 489 (Md. Ct. of Spec. App. 1991)........................................................25

*Livesay v. Baltimore County*,
    862 A.2d 33 (Md. 2004) .....................................................................................25

**Federal Statutes**

8 U.S.C. § 1357(g) ....................................................................................................4

42 U.S.C. § 1983.............................................................................................. *passim*

Civil Rights Act of 1964 Title VI, 42 U.S.C. § 2000d ....................................... *passim*

**Regulations**

28 C.F.R. § 42.102(f).................................................................................................23

**Others**

FCSO General Order 41.2...........................................................................................19

Memorandum of Agreement, available at
    https://www.ice.gov/doclib/287gMOA/Frederick_County_MOA_2016.pdf...........................4

Memorandum of Agreement, available at
    https://www.ice.gov/doclib/287gMOA/frederickcountysheriffsoffice.pdf ..............................4

## INTRODUCTION

Pursuant to Local Rule 105, Plaintiffs Sara Haidee Aleman Medrano ("Ms. Medrano") and Resources for Immigrant Support and Empowerment Coalition of Western Maryland ("RISE Coalition"), by and through counsel, oppose Defendants' Motion to Dismiss or, in the Alternative, to Bifurcate (ECF No. 11) ("Motion").  Defendants' Motion should be denied in its entirety.

In the first two causes of action in Plaintiffs' Complaint (ECF No. 1), Plaintiffs sue Sheriff Jenkins and Deputies Mothershead and Barrera in their personal and official capacities for violations of the Fourth and Fourteenth Amendments to the U.S. Constitution based on unlawful seizures and detentions and intentional race discrimination.  Under those same causes of action, and pursuant to *Monell*,[1] Plaintiffs sue Frederick County for violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments.  Plaintiffs also allege a third cause of action against Frederick County and the Frederick County Sheriff's Office ("FCSO") based on race discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

Significantly, Defendants concede that Plaintiffs have stated plausible claims against Frederick County Deputy Sheriffs Brian M. Mothershead and Randy C. Barrera ("Deputies Mothershead and Barrera") in their personal capacities based on their traffic stop of Ms. Medrano.  *See* Mot. to Dismiss at 2.  Accordingly, Defendants' motion is, at best, merely a motion for partial dismissal or bifurcation of Plaintiffs' claims.

---

[1]     *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978); *see also Santos v. Frederick County Bd. of Comm'rs*, 725 F.3d 451, 469 (4th Cir. 2013), *cert. denied*, 572 U.S. 1015 (2014) ("Plaintiffs alleging constitutional injuries may bring suits under Section 1983 against municipalities for unconstitutional actions taken by their agents and employees." (citing *Monell*, 436 U.S. at 691)); *Santos v. Frederick County Bd. of Comm'rs*, 346 F. Supp. 3d 785, 791 (D. Md. 2018) (citing *Monell*, 436 U.S. at 694).

Defendants' request for dismissal should be denied because none of their arguments provide a valid basis for dismissal.  Defendants make the following arguments to support their request for dismissal under Rule 12(b)(6)[2]:

- Plaintiffs have not stated a personal-capacity claim against Sheriff Jenkins;

- Plaintiffs did not properly plead a *Monell* claim;

- official-capacity claims against Deputies Mothershead and Barrera are not possible;

- the FCSO is not a legal entity capable of being sued;

- Frederick County is not a proper defendant; and

- the RISE Coalition lacks standing.

None of those arguments are convincing when considered in light of the facts in the Complaint and applicable law.  At this early stage of proceedings, Plaintiffs need only state plausible claims for relief to satisfy their burden—perfectly formed theories of liability with full factual development and supporting evidence are not necessary.  Plaintiffs satisfy their burden by alleging detailed facts that are not only sufficient to survive challenges posed by Defendants in their Motion, but would also warrant relief under applicable law if proven.

As an alternative to dismissal, Defendants request bifurcation of Plaintiffs' individual and municipal, or *Monell*, liability claims.  That request should also be denied because Defendants have not satisfied their burden of showing the bifurcation is warranted under the unique facts of this case.  To the contrary, bifurcation would be inefficient, unduly prejudice Plaintiffs, and waste time and resources of the parties and the Court because a predicate determination of

---

[2]      In their motion, Defendants also requested dismissal under Rule 12(b)(2), but they did not provide any argument to support that request, and this Court clearly has personal jurisdiction over all of the named Defendants in this case.  *See* Section I, *infra*.

whether there was a constitutional violation by individual Defendants will not resolve Plaintiffs'

Title VI claim, which lie directly against Frederick County and the FCSO.

## STATEMENT OF FACTS

Plaintiffs filed their Complaint on July 11, 2019, pursuant to 42 U.S.C. § 1983, seeking

compensatory and punitive damages, as well as equitable relief for injuries caused by actions of

Defendants in violation of the Fourth and Fourteenth Amendments to the United States

Constitution and Title VI.  *See generally* Compl. (ECF No. 1).

Plaintiffs' claims stem from their allegation that Ms. Medrano and other immigrant

members of the RISE Coalition have been subjected to unlawful and unconstitutional

interrogation, seizure and detention based on their race or ethnicity.  Compl. at ¶ 2.  Ms.

Medrano is a Latina woman who has lived in Frederick, Maryland for more than 13 years and

whose family lives in the area as well.  *Id.* at ¶ 4.  She is a member of the RISE Coalition, which

is a grassroots organization, consisting of more than 150 non-U.S. citizen residents living

primarily in Western Maryland counties, whose mission is to empower the immigrant

community in Western Maryland so that they can live productive and healthy lives free from

harassment and discrimination.  *Id.* at ¶¶ 4-5.

Defendant Jenkins has prioritized immigration enforcement in Frederick County since he

was first elected as Sheriff more than ten years ago.  *See, e.g.*, Compl. at ¶ 70.  Shortly after his

election, he entered the FCSO into an Inter-governmental Service Agreement ("IGSA") with

U.S. Immigration and Customs Enforcement ("ICE"), under which Frederick County and the

FCSO receive federal funding, reportedly in excess of actual costs, for housing immigrant

detainees.  *See id.* at ¶ 16.  Frederick County and the FCSO also receive federal money through

the U.S. Department of Justice State Criminal Alien Assistance Program for incarcerating undocumented immigrants ("SCAAP").  *Id.* at ¶¶ 9-10, 16.

On behalf of the FCSO, Sheriff Jenkins entered into a 287(g) Memorandum of Agreement ("287(g) MOA") with ICE, as part of the "287(g) program," which authorizes trained and certified deputy sheriffs to carry out limited, specified functions of federal immigration officers, under the direction and supervision of ICE.  *See* Compl. at ¶ 6; 8 U.S.C. § 1357(g) (identifying limited circumstances, under the direction and supervision of the federal government, in which state and local officials may perform immigration officer functions). When Sheriff Jenkins first entered into the 287(g) program, he signed a 287(g) MOA that permitted immigration enforcement in the community by authorized and trained deputies,[3] but the present version of the FCSO's 287(g) MOA with ICE only permits authorized and trained deputies to conduct immigration checks upon an arrestee's booking at the Frederick County Adult Detention Center.[4]  *See* Compl. at ¶ 15.

Plaintiffs allege that Sheriff Jenkins, as the chief law enforcement agent and final decision maker for Frederick County in the area of law enforcement, has engaged in a pattern and practice of anti-immigrant efforts to target and ostracize the immigrant community in Frederick County, and encourages his deputies to follow his example.  Compl. at ¶¶ 6, 13. Discriminatory policing by the FCSO is one manifestation of Sheriff Jenkins' overt animus toward Latinx immigrants, which he has made clear through statements to the media, at public events, and in his radical policy advocacy.  *See, e.g.*, *id.* at ¶ 14.

---

[3]      That 287(g) MOA included the "Task Force Model," as well as the "Jail Enforcement Model."  *See* Memorandum of Agreement, available at
https://www.ice.gov/doclib/287gMOA/frederickcountysheriffsoffice.pdf.
[4]      *See* Memorandum of Agreement, available at
https://www.ice.gov/doclib/287gMOA/Frederick_County_MOA_2016.pdf.

Plaintiffs identified Ms. Medrano's experience in Frederick County as one example of unlawful and discriminatory law enforcement by the FCSO, under the leadership of Sheriff Jenkins.  *See* Compl. at ¶ 19.  On July 7, 2018, she was stopped by an FCSO deputy and was subjected to a prolonged detention for no other reasons than her race and suspected immigration status.  *Id.* at ¶ 21.

Ms. Medrano was driving on U.S. Route 15, not far from her house, when she was pulled over by an FCSO deputy, believed to be Deputy Mothershead, even though she was not engaged in any activity that could reasonably have been perceived as unlawful.  Compl. at ¶ 21-28.  The deputy spoke to Ms. Medrano in English and although she did not recall him explaining why he had stopped her, he asked for her driver's license and car registration, and she provided them to him.  *Id.* at ¶¶ 32-34.  After approximately 10 minutes had passed since she provided her driver's license and car registration to Deputy Mothershead, another deputy, believed to be Deputy Barrera, approached and talked to Ms. Medrano in Spanish, which is Ms. Medrano's native language.  *Id.* at ¶¶ 31, 35.  The deputy asked if Ms. Medrano was a resident or citizen and told her to turn off her engine because she had an immigration problem and they were going to be there for a while so that immigration officials could come get her.  *Id.* at ¶ 38.  He also asked for the identity of the front seat passenger, Ms. Medrano's daughter.  *Id.* at ¶ 29.  Ms. Medrano complied by turning off the car, and her daughter provided her identification to the deputy.  *Id.* at ¶ 40.  After Deputy Mothershead contacted ICE, and after Ms. Medrano had been detained by Defendants for nearly an hour, Deputy Barrera returned Ms. Medrano's driver's license and handed her a written warning regarding her taillight, and he explained that immigration officials were not answering and that Ms. Medrano should get a lawyer because there was a deportation order for her.  *Id.* at ¶¶ 41-42, 45, 47.  Before and after that incident, Ms. Medrano has never

been pulled over for a taillight violation, and she has neither replaced any taillight nor experienced any problems with her taillights, after confirming that they worked just fine.  *See id.* at ¶¶ 49-51.  Ms. Medrano has suffered significantly and continues to suffer as a result of this incident.  *Id.* at ¶ 53.

Ms. Medrano's experience is similar to the experiences of other RISE Coalition members and non-member Latinx individuals in Frederick County, who have been stopped, detained, and arrested for no legitimate reason.  *See, e.g.*, Compl. at ¶ 55.  The experiences of Mr. A. G., Roxana Orellana Santos, and other unnamed individuals are similar examples.  *See id.* at ¶¶ 56-59.

Plaintiffs allege that the unlawful and discriminatory stops and detentions experienced by Ms. Medrano and other RISE Coalition members are the result of, or caused by policies, practices, or customs of the FCSO, as directed or otherwise encouraged or permitted by Sheriff Jenkins.  *See* Compl. at ¶¶ 60-67.  Even more disturbing is Sheriff Jenkins' willful disregard of complaints about FCSO misconduct related to racial profiling of Latinx individuals and improper immigration enforcement, while he continues to advocate for radical policies, some of which would be unconstitutional, and all of which would further isolate and marginalize immigrants. *See id.* at ¶¶ 74-84.

Plaintiffs' allegations regarding the experiences of Ms. Medrano and other members of the RISE Coalition, which result from the policies, practices, and customs of Frederick County, provide the foundation for her first and second causes of action for violation of rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.  *See* Compl. at ¶¶ 85-91, 93-98. Those causes of action are against Defendants Jenkins, Mothershead, and Barrera in their personal and official capacities and against Frederick County.

Based on Defendants' discriminatory implementation of policies and practices, Plaintiffs also allege a Title VI violation against Frederick County and the FCSO.  Compl. at ¶ 99-103. Frederick County and the FCSO receive federal financial assistance from the U.S. government as part of their participation in the IGSA, 287(g) program, and SCAAP.  *Id.* at ¶ 102.  As a result, they may not engage in actions that "have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program[s] as respects individuals of a particular race, color, or national origin."  *Id.* at ¶ 101 (quoting 28 C.F.R. § 42.104(b)(2)).

## LEGAL STANDARD

For dismissal under Rule 12(b)(2), the Court must determine that it lacks personal jurisdiction over Defendants.  *See* Fed. R. Civ. P. 12(b)(2).  "In order to determine whether a defendant can be held subject to specific jurisdiction in Maryland, this court considers: (1) whether the defendant purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities in the state; (2) whether its claims arise out of or result from those activities; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *Cricket Grp., Ltd. v. Highmark, Inc.*, 198 F. Supp. 3d 540, 543 (D. Md. 2016) (internal quotation marks, citation, and alterations omitted).

Dismissal of Plaintiffs' claims under Rule 12(b)(6) is appropriate only if Plaintiffs "cannot prove any set of facts in support of [their] claim[s]…."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Because Defendants' "Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, [the court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that … [P]laintiff[s]

would not be entitled to relief under any legal theory which might plausibly be suggested by the

facts alleged." *Id.* (quotations omitted).

The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) did not alter that

standard.  Instead, since *Iqbal*, the Supreme Court has held that the federal pleading rules "do not

countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).  The Court reaffirmed in

*Johnson* that there is no heightened pleading rule for civil rights cases alleging municipal

liability.  *Id.* at 347 (quotation omitted).  The Fourth Circuit also recently explained:

> Although prevailing on the merits of a *Monell* claim is difficult,
> simply alleging such a claim is, by definition, easier.  For to
> survive a motion to dismiss under Rule 12(b)(6), a complaint need
> only allege facts which, if true, "state a claim to relief that is
> *plausible* on its face."  The recitation of facts need not be
> particularly detailed, and the chance of success need not be
> particularly high.  A plaintiff fails to state a claim only when he
> offers "labels and conclusions" or formulaically recites the
> elements of his § 1983 cause of action.

*Owens v. Baltimore City State's Atty's Office*, 767 F.3d 379, 403 (4th Cir. 2014) (quoting *Iqbal*,

556 U.S. at 678) (emphasis in original).  The Fourth Circuit recognized in *Owens* that a plaintiff

need not identify with particularity other instances of similar conduct to sufficiently plead an

unlawful pattern, practice, or custom.  *Id.* at 403-04.

Rule 42(b) vests this Court with discretion to bifurcate claims for discovery and trial

when it would (1) "be conducive to expedition and economy," (2) "further[] the convenience" of

the court and the parties, or (3) "avoid[] prejudice."  Fed. R. Civ. P. 42(b).  But "[j]ust as

bifurcation may save judicial resources, it could cause a waste of judicial resources." *Afshar v.

City of Sacramento*, No. 04-1088, 2007 WL 779748, at *2 (E.D. Cal. Mar. 14, 2007) (internal

citations omitted).  Courts recognize that "there is no single 'best' way to handle [bifurcation in]

a claim arising under Section 1983.  Each case must be considered in light of its particular facts and circumstances." *Marryshow v. Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991); *see also Owensby v. Cincinnati*, 385 F. Supp. 2d 626, 665 (S.D. Ohio 2004) ("[A]ny decision ordering or denying bifurcation is dependent on the facts and circumstances of each case."), *aff'd*, 414 F.3d 596 (6th Cir. 2005) (internal quotations and citations omitted); *see also* 9A Charles Alan Wright & Arthur R. Miller, 9 FEDERAL PRACTICE & PROCEDURE CIV. 2d § 2388 ("The major consideration, of course, must be which procedure is more likely to result in a just and expeditious final disposition of the litigation.").

**I.      This Court has personal jurisdiction over all of the named Defendants.**

Curiously, apart from their request to dismiss Plaintiffs' Complaint under Rule 12(b)(6), Defendants also move for dismissal under Rule 12(b)(2) for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  Defendants provide no arguments to support that request.

This Court has specific jurisdiction over all of the Defendants named in the Complaint. Defendants do not dispute that Sheriff Jenkins is the chief law enforcement officer for Frederick County.  Nor do they dispute that Deputies Mothershead and Barrera are employees of the FCSO, a law enforcement agency located in Frederick County, Maryland, serving the residents of the county.  There is no dispute that Defendants regularly conduct law enforcement activities within Frederick County, thereby purposefully availing themselves of the privilege to conduct activities in the State of Maryland.  Additionally, Plaintiffs' claims arise out of Defendants' activities within Frederick County, when they stopped Ms. Medrano and other members of the RISE Coalition as part of their law enforcement duties and responsibilities.  Under these circumstances, exercise of specific jurisdiction over Defendants "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).

**II.      Plaintiffs allege a plausible claim against Sheriff Jenkins in his personal capacity.**

Plaintiffs allege personal and official-capacity claims against Sheriff Jenkins under their first two causes of action.  *See* Compl. at 23-26.  Such claims are not mutually exclusive. "Personal-capacity suits seek to impose personal liability upon a government individual for actions he takes under color of state law," and to establish liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985).  In contrast, official-capacity claims are "another way of pleading an action against an entity of which an officer is an agent."  *Id.* at 165; *accord Davison v. Randall*, 912 F.3d 666, 688-89 (4th Cir. 2019).

More specifically, "supervisory officials [like Sheriff Jenkins] can be held liable in certain instances for the constitutional injuries inflicted by their subordinates" based upon "supervisory indifference or tacit authorization of subordinates' misconduct" that is "a causative factor in the constitutional injuries they inflict" on others.  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (internal quotation marks and citations omitted).  Supervisory liability can be determined by "pinpointing" the person "whose deliberate indifference permitted the constitutional abuses to continue unchecked."  *Id.* at 798 (internal quotation marks and citation omitted).

In this case, Plaintiffs have pinpointed Sheriff Jenkins as a person who not only acts with deliberate indifference and reckless disregard for the constitutional rights of individuals, including Ms. Medrano, but actively encourages such constitutional violations in his role as the chief law enforcement official for Frederick County.  *See, e.g.*, Compl. at ¶ 89.  For example, Plaintiffs allege that "Defendant Jenkins … permitted or required deputies to arrest individuals when deputies were 'aware of an outstanding arrest warrant,'" without any distinction between different types of warrants or limitations upon use of federal civil immigration warrants in this

10

manner, resulting in detentions and arrests for the purpose of immigration enforcement." Compl. ¶ 60. Indeed, Sheriff Jenkins' policies and practices requiring seizures and detentions upon finding an outstanding civil immigration warrant for someone encountered on the streets of Frederick County were the bases for Frederick County liability in Ms. Orellana Santos's case. *See Santos*, 346 F. Supp. 3d at 797-98. Similarly, Plaintiffs allege that "Defendant Jenkins has, at best, completely ignored and disregarded complaints of selective enforcement against immigrants of color, despite the active litigation against him for similar behavior committed by FCSO deputies in the arrest and persecution of Roxana Orellana Santos," and "Defendant Jenkins deliberately directs, encourages, aids, abets, and/or permits deputies of the FCSO to selectively target for investigation individuals whom deputies perceive, based upon their race, to be immigrants to the United States…." *Id.* at ¶ 61; *see also, e.g.*, *id.* at ¶¶ 74-84 (describing in detail actions and statements by Sheriff Jenkins encouraging racist and anti-immigrant policies and actions while ignoring complaints of unlawful actions committed by FCSO deputies or approving of unlawful actions by deputies). Those allegations, when read in light of other supporting facts in the Complaint are sufficient to state a plausible claim against Sheriff Jenkins in his personal capacity, regardless of whether he was physically present with or specifically directed his deputies when they encountered Ms. Medrano or other similarly-situated individuals who were unlawfully stopped, detained or arrested by FCSO deputies. *Cf. Shaw*, 13 F.3d at 799-800 (reversing summary judgment against defendant in his personal capacity because evidence supported a supervisory liability claim); *Baynard v. Malone*, 268 F.3d 228, 235-236 (4th Cir. 2001) (affirming denial of a motion for judgment as a matter of law because evidence supported a supervisory liability claim); *Farmer v. Ramsay*, 41 F. Supp. 2d 587, 594 (D. Md. 1999)

(rejecting argument for dismissal based on lack of "personal involvement" because plaintiff alleged that they "knew of and participated in the discriminatory policy").

Ignoring specific allegations in Plaintiffs' Complaint, Defendants erroneously argue that Plaintiffs' allegations could only support a *Monell* claim, rather than an individual liability claim. Cases cited by Defendants stand for the unremarkable proposition that an official-capacity, or *Monell*, claim is different, with respect to the burden of proof and defenses available, from a personal-capacity claim. *See, e.g.*, *Graham*, 473 U.S. at 165-170. That proposition does not undermine Plaintiffs' claims against Sheriff Jenkins in his personal capacity. To the contrary, at least two of the cases cited by Defendants recognized that similar supervisory liability claims were plausible against defendants in their personal capacities. *See Burgos v. City of Philadelphia*, 270 F. Supp. 3d 788, 795 (E.D. Pa. 2017); *Potts v. Moreci*, 12 F. Supp. 3d 1065, 1072-76 (N.D. Ill. 2013); *see also Cahill v. Live Nation*, 866 F. Supp. 2d 503, 524 (W.D. Pa. 2011) ("[A] supervisor may be liable … for his or her subordinate's unlawful conduct if he or she directed, encouraged, tolerated, or acquiesced in that conduct.").

In fact, Plaintiffs are requesting punitive damages against Sheriff Jenkins in his personal capacity, due to his culpability for constitutional violations. A jury may assess punitive damages against Sheriff Jenkins under § 1983 if it determines that his conduct involves "reckless or callous indifference to the federally protected rights of others"; actual intent or malice is not required. *Smith v. Wade*, 461 U.S. 30, 56 (1982); *accord Morris v. Bland*, 666 Fed. Appx. 233, 240 (4th Cir. 2016) (quoting *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987)). Plaintiffs' allegations about Sheriff Jenkins' conduct, as previously explained, are more than sufficient to meet that standard if proven. *Cf. Morris*, 666 Fed. Appx. at 240 (concluding that deliberate indifference to medical needs "satisfies the requirement that [defendants'] conduct involve

reckless or callous indifference to Woods's federally-protected rights"); *Larez v. Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991) (concluding that punitive damages could be imposed against individual officers upon a finding of individual liability even if there was no actual malice).

In sum, Plaintiffs plausibly allege personal- *and* official-capacity claims.  Defendant Jenkins is the central person for *both* types of claims due to his position as Frederick County Sheriff and due to his actions, which caused the violation of Plaintiffs' rights.  *See also* Section III.A, *infra* (explaining official capacity and other *Monell* claims in Plaintiffs' Complaint).

**III.    Plaintiffs allege plausible *Monell* claims under their first and second causes of action for violations of Plaintiffs' constitutional rights.**

Plaintiffs allege *Monell* claims in their Complaint.  *See, e.g.*, Compl. ¶¶ 85-98.  In particular, Plaintiffs allege official-capacity claims against Sheriff Jenkins and Deputies Mothershead and Barrera, based on violations of constitutional rights identified in Plaintiffs' first and second causes of action, which are "treated as suits against the municipality."  *Santos*, 725 F.3d at 469 (internal quotation marks and citation omitted).  Similarly, Plaintiffs allege *Monell* claims against Frederick County based on violations of constitutional rights identified in Plaintiffs' first and second causes of action.

Numerous facts in the Complaint about underlying unconstitutional acts by Defendants support these claims.  Deputies Mothershead and Barrera seized or detained Ms. Medrano for a prolonged period of time based on nothing more than her actual or perceived race, ethnicity, or national origin, without reasonable suspicion that she was involved in criminal activity.  Compl. at ¶ 87; *see also id.* at ¶¶ 19-54 (describing the traffic stop of Ms. Medrano).  Similarly, other members of the RISE Coalition have been subjected to seizures or detentions for prolonged periods of time based on nothing more than actual or perceived race, ethnicity, or national origin,

without reasonable suspicion that they were engaged in criminal activity.  *Id.* at ¶ 88; *see also, e.g.*, *id.* at ¶ 59 (describing repeated traffic stops of Mr. A. G. by FCSO deputies).

**A.**   **Plaintiffs allege plausible claims against Deputies Mothershead and Barrera in their official capacities for violation of Ms. Medrano's constitutional rights.**

Defendants erroneously argue that official capacity suits against Deputies Mothershead and Barrera should be dismissed because *Monell* liability is only possible against the Sheriff in his official capacity as "the final decision maker."  Mot. to Dismiss at 10.  Defendants concede that Plaintiffs stated plausible claims against Deputies Mothershead and Barrera in their personal capacities for violation of Ms. Medrano's constitutional rights under the Fourth and Fourteenth Amendments, and the deputies have already have filed an Answer (ECF No. 10).  Defendants' argument urging dismissal of official-capacity claims against the deputies ignores *Santos*, in which this Court concluded that "Sheriff Jenkins is liable in his official capacity as the final policymaker, *and* Deputies Openshaw and Lynch would be liable in *their* official capacities because *their* unconstitutional actions are directly traceable to this policy."  *Santos*, 346 F. Supp. 3d at 798 (emphasis added); *see also Santos*, 725 F.3d at 469-470 (vacating dismissal of official-capacity claims against Sheriff Jenkins *and* two of his deputies who unlawfully seized and arrested plaintiff).  Similarly, Ms. Medrano and the RISE Coalition allege that actions of FCSO deputies are directly traceable to the policies, practices, or customs of Sheriff Jenkins, as a final policymaker for Frederick County.

**B.**   **Based on facts in their Complaint, Plaintiffs allege multiple plausible theories for *Monell* liability.**

As Defendants acknowledge, there are "various types of *Monell* claims."  Mot. to Dismiss at 11.  As described in more detail below, facts in Plaintiffs' Complaint support multiple plausible theories for municipal liability based on, at a minimum, the following: (1) a formal or

written policy; (2) a pattern, practice, or custom; and (3) a failure to train.  Nothing more is required at this stage of the case.  *See Owens*, 767 F.3d at 403.

> **1.     Sheriff Jenkins implemented and adhered to a formal or written policy that caused the harm Plaintiffs allege in their Complaint.**

At all times relevant to this case, FCSO policy effectively required and directed FCSO deputies, including Deputies Mothershead and Barrera, to stop or detain individuals encountered on the streets when the deputies learned of any "outstanding arrest warrant," without any distinction between different types of warrants or limitations on enforcement of civil immigration arrest warrants, like that which formed the basis for the unlawful seizure of Ms. Medrano and others.  Compl. at ¶ 60; *see also id.* at ¶ 45 (alleging that the deputies purportedly identified a deportation order for Ms. Medrano).  These allegations are sufficient to support a "clear case" based on a formal or written policy that resulted in the unlawful seizure of Ms. Medrano.  *Monell*, 436 U.S. at 713; *cf. Santos*, 346 F. Supp. 3d at 795 ("Sheriff Jenkins, as signatory on the 1357(g) agreement, was aware that only officers trained and certified under the agreement were permitted to engage in immigration enforcement.  Despite this fact, he promulgated a General Order that required all patrol officer[s] to run warrant checks on stopped individuals, and detain any individual with an outstanding warrant, regardless of whether the warrant was civil or criminal.").[5]

> **2.     Sheriff Jenkins established a pattern, practice, or custom of unlawful immigration enforcement and discrimination against Latinx individuals, causing the harm Plaintiffs allege in their Complaint.**

Sheriff Jenkins, a final policymaker for the county, established and encouraged an anti-immigrant culture at the FCSO and for law enforcement in Frederick County based on his

---

[5]     *See also, e.g.*, *Maddux v. Officer One*, 90 F. Appx. 754 (5th Cir. 2004) (city had written policy authorizing police officers to forcibly enter premises without a warrant); *Tardiff v. Knox County*, 425 F. Supp. 2d 159 (D. Me. 2006) (written policy authorizing strip search of felony arrestees arrested for non-violent, non-weapon, non-drug related charges).

discriminatory actions, advocacy, and public comments.  *See, e.g.*, Compl. at ¶¶ 67-68, 74-77.

Additionally, Sheriff Jenkins devoted increasing resources to immigration enforcement by

advocating for anti-immigrant policies and local immigration enforcement, acting as the FCSO

signatory for the 287(g) MOA, and by entering into the IGSA with ICE, which provides a

financial incentive for the FCSO and Frederick County to engage in immigration enforcement.

*See, e.g.*, *id.* at ¶¶ 15-16, 68-70, 72-73, 77-82.  Furthermore, Sheriff Jenkins ignored, permitted,

or approved of actions of his deputies that were the subject of past complaints of discriminatory

or unlawful law enforcement, like that experienced by Ms. Medrano and other members of the

RISE Coalition.  *See* Compl. at ¶¶ 55-59, 61-65.  The case of Ms. Orellana Santos is one

example.  *See id.* at ¶ 56.  Such facts support a conclusion that Sheriff Jenkins encouraged,

permitted, or acquiesced in discriminatory and unlawful seizures and detentions of Latinx

individuals by FCSO deputies.  *See, e.g.*, *id.* at ¶¶ 83-84, 87-88, 90-91, 93-94.

Sheriff Jenkins either was, or should have been, aware that that his policies result in

unlawful and discriminatory immigration enforcement.  *See* Compl. at ¶¶ 74-76, 90, 95, 98.

Such allegations are sufficient to state a plausible municipal liability claim based on a pattern or

practice.  *See Monell*, 436 U.S. at 690-91; *cf. Sharp v. City of Houston*, 164 F.3d 923, 935-36

(5th Cir. 1999) (finding a custom existed for transfers and demotions when officers reported

misconduct); *Watson v. City of Kansas City*, 857 F.2d 690, 696 (10th Cir. 1988) (police

department custom for treating domestic violence cases lightly).

### 3. Sheriff Jenkins failed to train his patrol deputies, including Deputies Mothershead and Barrera, not to engage in immigration enforcement, directly causing the harms Plaintiffs allege in their Complaint.

Sheriff Jenkins' improper implementation of the 287(g) MOA encompasses his failure to

train and instruct his deputies about enforcing federal immigration laws *without* 287(g)

certification and training, thereby resulting in unlawful seizures and arrests and unlawful racial

profiling, including in the traffic stop of Ms. Medrano. *See, e.g.*, Compl. at ¶¶ 6, 9, 66, 89.

Other allegations in the Complaint about the misuse of authority with respect to implementation of the 287(g) MOA serve to reinforce Plaintiffs' conclusion that Sheriff Jenkins was deliberately indifferent and grossly negligent in his supervision and training of deputies: he was on notice that deputies were acting in contravention of the requirements of the 287(g) program and the 287(g) MOA. *See id.* at ¶¶ 15, 56, 59, 74, 75. Nevertheless, Frederick County and Sheriff Jenkins did nothing (via written policy or otherwise) to properly direct or train deputies on whether and how they could enforce federal immigration law if they were not certified or trained under the 287(g) program. *See, e.g.*, *id.* at ¶¶ 63, 89.

These allegations are sufficient to state a plausible municipal liability claim. "There is no requirement that a plaintiff detail specific facts underlying such a claim [of inadequate training] or allege more than one act to establish a policy of deliberate indifference." *Cf. King v. Jefferies*, 402 F. Supp. 2d 624, 633 (M.D.N.C. 2005) (citing *Jordan*, 15 F.3d at 337-39).

### C.     Plaintiffs properly allege causation as part of their *Monell* claims.

Contrary to Defendants' assertion that Plaintiffs have not pled causation, see Mot. to Dismiss at 13, many facts in the Complaint support a conclusion that "the allegedly unconstitutional act[s] stem[] from an established municipal policy or the actions of a final policymaker." *Santos*, 725 F.3d at 470. For example, Sheriff Jenkins "proximately caused" the unconstitutional acts described in the Complaint by knowingly and intentionally engaging in a policy, practice, or custom that allows or requires detentions or arrests of individuals on the basis of their immigration status, and he has failed to properly train FCSO officers about their legal responsibilities. Compl. at ¶¶ 66, 89. Similarly, Sheriff Jenkins' discriminatory anti-immigrant rhetoric and policy advocacy support a conclusion that he encouraged, condoned, or tolerated discriminatory enforcement of laws or misuse of the 287(g) program against Latinx individuals

like Ms. Medrano and other members of the RISE Coalition.  *See, e,g.*, Compl. at ¶ 95.  Further,

FCSO patrol operations policy required deputies to seize and arrest individuals like Ms. Medrano

when deputies are "aware of an outstanding arrest warrant," without any distinction between

different types of warrants or limitations on use of federal civil immigration warrants.  *Id.* at ¶

60; *see also Santos*, 346 F. Supp. 3d at 769-770, 797 (describing the same General Order,

entitled 41.2 Patrol Operations, and concluding that the county was liable for the unlawful

seizure and arrest of plaintiff based on that policy).  Plaintiffs also allege that the unlawful

actions of FCSO deputies, including Deputies Mothershead and Barrera, resulted from their

compliance with Sheriff Jenkins' policies, practices, or customs.  *See, e.g.*, Compl. at ¶¶ 87-88,

91, 94-95, 97-98.

> **D.      Defendants mischaracterize the relevance of the 287(g) program to Plaintiffs'
> claims.**

Defendants baldly assert that the 287(g) program is the "cornerstone" of Plaintiffs'

*Monell* claims.  Mot. to Dismiss at 12.  That is not so.  Although the 287(g) program is relevant

to Plaintiffs' *Monell* claims, Plaintiffs do not allege that Ms. Medrano was processed through the

287(g) program.  Instead, as previously explained, Plaintiffs allege at least three plausible

theories of *Monell* liability, none of which require a finding that Ms. Medrano was processed

through the 287(g) program.[6]  *See* Section III.B.1-3, *supra*.

Defendants also erroneously argue that this Court's opinion in *Santos* is "irrelevant"

because "the 287(g) Program is not alleged to have been involved in any way here."  Mot. to

Dismiss at 12.  As in this case, Ms. Orellana Santos did "*not*" allege that "the Deputies [who

unlawfully seized and arrested her] were actually participating in the 287(g) program."  *Santos v.*

---

[6]      Similarly, Plaintiffs' assertions that Deputies Mothershead and Barrera "were not 287(g)
certified" and Ms. Medrano "was not allegedly stopped or detained as a result of that program"
do not mean that Plaintiffs' claims rely on Ms. Medrano being processed through the 287(g)
program.

*Frederick County Bd. of Comm'rs*, No. 09-2978, 2016 U.S. Dist. LEXIS 78347, at *11 (D. Md. June 16, 2016) (emphasis added). This Court's conclusion in *Santos* that Frederick County was liable for the unlawful seizure and arrest of Ms. Orellana Santos was based primarily on its finding that the deputies acted in accordance with FCSO General Order 41.2, which "required non-1357(g) deputies … to detain Ms. Santos based on a civil immigration warrant." *Santos*, 346 F. Supp. 3d at 797. That same policy is at issue in this case. *See* Compl. ¶ 60; Section III.B.1, *supra*.

Of course, that does not mean that the 287(g) program is irrelevant to Plaintiffs' claims in this case, as Defendants erroneously claim. The 287(g) program is relevant to the determination of whether Sheriff Jenkins engaged in a policy or practice of permitting unlawful immigration enforcement in violation of Plaintiffs' rights. *Cf. Santos*, 346 F. Supp. 3d at 795 ("While Ms[.] Orellana Santos was not seized pursuant to [the 287(g)] agreement,… her unconstitutional seizure and arrest are directly traceable to FCSO's participation in that agreement and FCSO's subsequent failure to differentiate between authorized and unauthorized officers in their patrol procedures."); *see also* Section III.B.3, *supra*. Additionally, the 287(g) program is relevant with respect to discriminatory law enforcement by the FCSO and related experiences of members of the RISE Coalition. *See, e.g.*, Compl. at ¶¶ 63-65, 88-89, 95.

The facts alleged in the Complaint based on the account of Mr. Fisher—concerning FCSO deputies' admission that they arrested, rather than cited, an individual for an open container offense so that they could process him through the 287(g) program and deport him for an immigration offense—further show the relevance of the 287(g) program. *See* Compl. at ¶ 59. Defendants argue that Mr. Fisher's account of what he heard is "irrelevant" because "Plaintiff was not arrested or taken to the Detention Center." Mot. to Dismiss at 12. Although

19

Defendants' argument is unclear, the implication seems to be that the incident recounted by Mr. Fisher is materially different from the traffic stop of Ms. Medrano because she was not arrested or taken to the Frederick County Adult Detention Center.  That distinction does not mean that Mr. Fisher's account is irrelevant.  To the contrary, Mr. Fisher's account is relevant in showing a pattern of targeted and discriminatory law enforcement by Defendants under the guise of legitimate law enforcement.  *See, e.g.*, Compl. at ¶¶ 55, 61-62, 64, 90, 93-94.  Mr. Fisher's account is also relevant to an *alternative* basis for *Monell* liability—one alleged in the Complaint that might be separate from the policy or practice that caused the unlawful traffic stop of Ms. Medrano—based on "detaining and arresting individuals on the basis of their immigration status as a pretext to process them through the 287(g) program."  Compl. at ¶ 89.

> **E.     The allegations in Plaintiffs' Complaint about the experiences of Mr. A. G. are tied to the policies, practices, or customs alleged in the Complaint.**

Defendants also incorrectly assert that allegations in the Complaint regarding Mr. A. G. "are not tethered to any unconstitutional policy, custom or practice."  Mot. to Dismiss at 12.  In fact, Mr. A. G.'s experiences, like the experiences of Ms. Medrano and Ms. Orellana Santos and other individuals, together establish a pattern and practice of targeted and discriminatory law enforcement by Defendants under the guise of legitimate law enforcement.  *See, e.g.*, Compl. at ¶¶ 55, 61-62, 64, 90, 93-94.  Those allegations are sufficient to state a plausible claim for *Monell* liability.  *See* Section III.B.2, *supra*.

Defendants suggest that if there was probable cause to believe that Mr. A. G. had committed traffic or other violations, he could be lawfully stopped.  *See* Mot. to Dismiss at 12 n.7.  Defendants' mischaracterization ignores facts alleged by Plaintiffs, omitting the allegation that there was neither reasonable suspicion nor probable cause because Mr. A. G. "is a U.S. citizen and is regularly pulled over based upon *false* or *suspicious* allegations of broken tail

lights and other minor traffic violations."  Compl. at ¶ 58 emphasis added).  Defendants'

characterization also oversimplifies and ignores applicable law.  Like the nearly hour-long traffic

stop of Ms. Medrano to check her immigration status, traffic stops based on race or

discriminatory targeting of individuals for law enforcement violate the Equal Protection Clause

of the Fourteenth Amendment.  *Md. State Conf. of NAACP Branches v. Md. State Police*, 454 F.

Supp. 2d 339, 347 (D. Md. 2006) ("Stops and searches based on such considerations as race …

are precluded by the Equal Protection Clause of the 14th Amendment." (citing *Whren v. United*

*States*, 517 U.S. 806, 813 (1996))).  Moreover, extending an initially valid traffic stop to

separately investigate a person's immigration status violates the Fourth Amendment's protection

against unreasonable seizures.  *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 413 (2012)

("Detaining individuals solely to verify their immigration status would raise constitutional

concerns."); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by

the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged

beyond the time reasonably required to complete that mission.").

  **F.**  **Plaintiffs' allegations regarding Sheriff Jenkins' outspoken animus toward immigrants reinforce Plaintiffs' *Monell* claims.**

  Contrary to Defendants' assertions otherwise, see Mot. to Dismiss at 12, Sheriff Jenkins'

outspoken racist animus toward immigrants is directly related to constitutional violations alleged

in the first and second causes of action based on the Fourth and Fourteenth Amendments.  In

particular, facts showing his animus support a conclusion that he "condoned the discriminatory

practices" in law enforcement described in the Complaint.  Compl. at ¶ 95; Section III.B.2,

*supra*; *see also id.* at ¶¶ 68-84 (describing facts supporting a finding of racial, ethnic, and anti-

immigrant animus).  At the very least, such facts are relevant to Plaintiffs' *Monell* claims

because they "provide some critical background information to place the Deputies' conduct in context." *Santos*, 2016 U.S. Dist. LEXIS 78347 at *12.

This Court in *Santos* concluded that similar factual allegations were relevant to *Monell* claims based on Fourth Amendment violations, even though the Court had previously concluded that Ms. Orellana Santos's "equal protection claims were not viable." *Santos*, 2016 U.S. Dist. LEXIS 78347 at *12. The importance, apart from mere relevance, of such allegations is even more apparent in this case because Defendants have already conceded that Plaintiffs stated a plausible claim based on equal protection violations. *See, e.g.*, Compl. at ¶¶ 92-98.

## IV.    Plaintiffs properly identified Frederick County and the FCSO as Defendants.

While Plaintiffs named Frederick County in all three of their causes of action, they identify the FCSO as a Defendant in only their third cause of action, which is based on Title VI. Entities like Frederick County and the FCSO, as opposed to individuals, are proper defendants under Title VI because they receive federal financial assistance and are therefore subject to Title VI non-discrimination requirements. Further, it would be premature to dismiss *Monell* claims against Frederick County because discovery has not even begun.

### A.    Plaintiffs properly identified the FCSO as a Defendant in their Title VI claim.

Defendants argue that the FCSO is not a legal entity that can be sued, but the cases they cite are inapposite because they did not involve claims under Title VI.[7] *See* Mot. to Dismiss at 6-7. The holdings in cases cited by Defendants were limited to the specific facts and claims alleged. *See, e.g.*, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) (concluding that § 1983 municipal liability claims against the "Office of Sheriff" were properly

---

[7]    Defendants suggest that Plaintiffs included *Monell* claims against the FCSO, see Mot. to Dismiss at 13, but that is incorrect. The FCSO is only a defendant for Plaintiffs' third cause of action based on Title VI.

dismissed because it was not a legal entity that was distinct from the Sheriff in his official capacity and the county government, which were also named as defendants for the same claims).

In contrast, Plaintiffs' claim against the FCSO is under Title VI, and such claims are cognizable against government agencies that receive federal funds. *See* 28 C.F.R. § 42.102(f) (defining "recipient" as, *inter alia*, a "political subdivision of any State, or instrumentality of any State or political subdivision, any public or private agency, institution, or organization, or other entity"). As Plaintiffs alleged in their Complaint, the FCSO directly receives federal funding through reimbursements pursuant to SCAAP and the FCSO's IGSA with ICE. *See, e.g.*, Compl. ¶ 10 (alleging that); *cf. Santos*, 346 F. Supp. 3d at 795 ("Frederick County is a political subdivision under which FCSO operates" with respect to immigration enforcement.). Accordingly, Plaintiffs' Title VI claim, based on federal funding received directly by the FCSO, must be against the FCSO as an entity, rather than, for example, Sheriff Jenkins in his official capacity. *Cf. Bishop v. Lewis*, No. 10-3640, 2011 U.S. Dist. LEXIS 48040, at *10-11 (D. Md. May 4, 2011) (dismissing Title VI claim against the Sheriff of Wicomico County in his official capacity because Title VI "funds would be received by a governmental agency and not by an individual").[8]

At the very least, dismissal of Plaintiffs' claim against the FCSO prior to discovery would be "premature." *LaPier v. Prince George's County*, No. 10-2851, 2011 U.S. Dist. LEXIS 109625, at *7 n.1 (D. Md. Sept. 27, 2011). "[I]nformation regarding the extent to which the

---

[8]      *See also, e.g.*, *Kitchings v. Anne Arundel County Bd. of Educ.*, No. 02-0727, 2002 WL 31720746, at *7 (D. Md. Dec. 3, 2002) ("[I]ndividual defendants are not liable under Title VI, which applies only to 'programs or activities' receiving Federal funding."); *Farmer*, 41 F. Supp. 2d at 592 ("[T]he proper defendant in a Title VI case is an entity rather than an individual.") (internal citation omitted).

County" or the FCSO "receives federal assistance is necessary to resolve this question." *Id.* at *7-8 n.1.

Even if the FCSO is not technically a properly named Defendant for Plaintiffs' Title VI claim, dismissal "would elevate needlessly form over substance." *Abunaw v. Prince George's Corrections Dep't*, No. 13-2746, 2014 U.S. Dist. LEXIS 99903, at *4 (D. Md. Jul. 23, 2014). Instead, the claim should simply be construed as one against Frederick County. *Cf. id.* at 5 (construing claims against the county police department as claims against Prince George's County); *see also United States v. Maricopa County*, 915 F. Supp. 2d 1073 (D. Ariz. 2012) (ruling that the county government is a proper Title VI defendant).

### B. Plaintiffs properly identified Frederick County as a Defendant in all of their claims.

Relying on this Court's opinion in *Santos*, Defendants argue that Frederick County is not a proper defendant. *See* Mot. to Dismiss at 14-16. *Santos*, however, did not involve a Title VI claim at the time when the Court ruled on municipal liability. As previously explained with respect to the FCSO, the proper defendants for such claims are the entities that receive funds, rather than individuals in their official capacities. *See* Section IV.A, *supra*.

Furthermore, it is premature to dismiss *Monell* claims against Frederick County because discovery has not even begun. When this Court concluded in *Santos* that the Frederick County Board of Commissioners was not liable, it did so on summary judgment, *only after* Ms. Orellana Santos's equal protection claim was dismissed during the individual liability phase of the case, and *after* discovery with respect to *Monell* claims was completed after remand to this Court. *See Santos*, 346 F. Supp. 3d at 789. This Court considered a "ratification" theory of municipal liability, based on the particular facts related to actions by the Frederick County Board of Commissioners after the Fourth Circuit's opinion in that case and before the case was remanded

to this Court.  *See id.* at 800; *Santos*, 725 F.3d at 470 (concluding that dismissal of claims against

the Frederick County Board of Commissioners was error).  Plaintiffs in this case have not relied

on that same ratification theory of liability or the same facts underlying the ratification theory

alleged in *Santos*.

Other cases cited by Defendants are inapposite because they did not involve *Monell*

claims.  *See* Mot. to Dismiss at 15-16 (collecting cases).  Instead, those cases involved claims

based on the Local Government Tort Claims Act, which presents entirely different issues with

respect to immunity.  *See, e.g.*, *Schmidt v. Town of Cheverly*, 212 F. Supp. 3d 573, 583 (D. Md.

2016) (wrongful discharge claim); *Hoffman v. Balt. Police Dep't*, 379 F. Supp. 2d 778, 790 (D.

Md. 2005) (same); *Livesay v. Baltimore County*, 862 A.2d 33, 44 (Md. 2004) (negligence claim);

*Khawaja v. Rockville*, 598 A.2d 489, 494 (Md. Ct. of Spec. App. 1991) (same).

**V.    Defendants' challenge to the standing of the RISE Coalition should be rejected at this early stage of proceedings.**

Defendants urge the Court to dismiss all claims brought by the RISE Coalition, on

grounds of the Constitution's Article III standing requirement.  *See* U.S. Const. art. III, § 2, cl. 1;

*Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013).  As this Court has previously explained:

> A plaintiff establishes standing by demonstrating (1) a concrete
> and particularized injury that is actual or imminent; (2) fairly
> traceable to the challenged conduct; and (3) likely to be redressed
> by a favorable judicial decision.

*Hispanic Nat'l Law Enforcement Ass'n NCR v. Prince George's County*, No. 18-3821, 2019 WL

2929025, at *3 (D. Md. Jul. 8, 2019) (internal quotation marks and citations omitted).  However,

as explained below, Defendants' challenge to the standing of the RISE Coalition fails for two

reasons: (1) it is undisputed that Ms. Medrano has standing to bring this case, and the presence of

one plaintiff with standing is all that is required at the 12(b) stage; and (2) Plaintiffs allege

sufficient facts to establish that the RISE Coalition has independent, associational standing to sue on behalf of its members.

### A.   Defendants' challenge to the standing of the RISE Coalition fails because Ms. Medrano has standing to sue.

Defendants do not contest the standing of Ms. Medrano to sue based on alleged violations of her constitutional rights.   That concession is fatal to their standing argument with respect to the RISE Coalition because "the presence of even one plaintiff with standing is sufficient to satisfy Article III's case-or-controversy requirement," and thus deny a Rule 12(b) motion. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n. 2 (2006); *Bostic v. Shaefer*, 760 F.3d 352, 370 (4th Cir. 2014) ("a case is justiciable if. . . plaintiffs have standing as to a particular defendant" (citing *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1990))).   Given that Defendants do not dispute Ms. Medrano's standing, the Court here need not evaluate at this early stage whether the RISE Coalition has independent standing.   *See id.*; *cf. La Union Del Pueblo Entero v. Ross*, 353 F. Supp. 3d 381, 390 (D. Md. 2018) (concluding that "the Court need not consider whether organizational plaintiffs have standing" because individual plaintiffs had standing to sue).

### B.   The RISE Coalition has adequately alleged associational standing to sue on behalf of its members.

Even if Defendant's standing challenge were not thwarted by *Rumsfeld* and similar cases, it would fail because the RISE Coalition has associational standing to sue on behalf of its members.   The RISE Coalition is "a grassroots membership organization whose mission is to empower the immigrant community in Western Maryland by organizing existing resources and providing new resources to support the immigrant community to live productive and healthy lives free from harassment and discrimination."   Compl. at ¶ 5.   The organization has hundreds of members, including "non-United States citizen residents living primarily in Western Maryland

26

counties, including Ms. Medrano and other Frederick County residents," and its membership explicitly includes "members who have suffered from the Frederick County's discriminatory policing practices." *Id.*

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. at 511; *see, e.g.*, *NAACP v. Alabama*, 357 U.S. 449 (1958); *Int'l Union, United Automobile Workers v. Brock*, 477 U.S. 274 (1986); *Int'l Woodworkers v. Chesapeake Bay Plywood*, 659 F.2d 1259, 1266-67 (4th Cir. 1983). To demonstrate representative standing, the association must "allege that its members, or any one of them, are suffering immediate or threatened injury of the sort that would make out a justiciable case had the members themselves brought suit." *Warth*, 422 U.S. at 511. An association should be granted representational standing if: (1) its own members would have standing in their own rights; (2) the interests the association seeks to protect are germane to the association's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 343 (1977). Associational standing is particularly appropriate where "the association is seeking to represent interests which are central to the purpose of the organization," and "where the relief sought is some form of prospective remedy, such as a declaratory judgment, which will inure to the benefit of the organization's membership." *Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1259 (7th Cir. 1983), *cert. denied*, 467 U.S. 1259 (1984).

This is precisely the role that the RISE Coalition seeks in this case, as shown by facts Plaintiffs' allege in the Complaint. First, Ms. Medrano is a member of the RISE Coalition, see Compl. at ¶ 4, with uncontested standing to sue. Further, Plaintiffs also named other members who are not individual plaintiffs but could be, if the RISE Coalition were not representing their

interests, including Mr. A. G.   Importantly, the RISE Coalition is participating as a plaintiff for the purposes of securing prospective equitable relief to benefit all of its members.  *See, e.g.*, Compl. at ¶ 5.  Moreover, protection of immigrants from arbitrary and racially discriminatory police action is at the core of the organization's mission.  *See id.*  Such allegations suffice to establish organizational standing.  *See Wiley v. Mayor and City Council of Baltimore*, 48 F.3d 773 (4th Cir. 1995), *cert. denied*, 116 S. Ct. 89 (1995).

*Wiley* involved a challenge by individual police officers and the Fraternal Order of Police ("FOP") to a Baltimore City policy requiring police officers to undergo polygraph examinations. Allowing the case to move forward, the Fourth Circuit, in an opinion by former Supreme Court Justice Lewis F. Powell, rejected the government's contention that the FOP lacked standing to seek equitable relief:

> In light of Appellant's well-pleaded allegation that the Baltimore City Police Department maintains a policy of requiring officers to take polygraph tests, we think there is sufficient likelihood … that some members of the local [FOP] will, in the future, be affected by this policy.  Accordingly, we find no standing problem here.

48 F. 3d at 775-76 (internal citation omitted).

That rationale applies to this case as well.  The RISE Coalition properly alleges associational standing to challenge unconstitutional and racially discriminatory targeting of its immigrant members by Sheriff Jenkins, the FCSO, and Frederick County.

## VI.  Defendants have not satisfied their burden of showing that bifurcation is appropriate in this case.

As an alternative to their request for dismissal, Defendants seek bifurcation of Plaintiffs' claims against individual and entity Defendants.  This request runs contrary to the ordinary presumption that "all claims in a case will be resolved in a single trial, and it is only in exceptional instances where there are special and persuasive reasons for departing from this

practice that distinct causes of action asserted in the same case may be made the subjects of separate trials."[9] *Martinez v Robinson*, No. 99-11911, 2002 WL 424680, at *2 (S.D.N.Y. Mar. 19, 2002) (internal quotations omitted).  Thus, Defendants bear the burden of proof to justify bifurcation, so as to "overcome the general principle that a single trial tends to lessen the delay, expense and inconvenience to all the parties."  *Clements v. Prince George's County*, No. 90-1878, 1992 WL 165814, at *1 (D. Md. June 30, 1992) (citations omitted); *see also Pavone v. Gibbs*, No. CV 95-0033, 1997 WL 833472, at *2 (E.D.N.Y. Sept. 29, 1997) ("The moving party bears the burden of establishing that separate trials are necessary to prevent prejudice or confusion.").  As explained below, Defendants have not come close to satisfying that burden.  To the contrary, bifurcation would be inefficient, unduly prejudice Plaintiffs, and waste resources of the parties and the Court because Plaintiffs' Title VI claim against Frederick County and the FCSO is not predicated on Plaintiffs' constitutional claims against individual defendants.

### A.    Bifurcation is inappropriate because Plaintiffs allege non-derivative claims against Frederick County and the FCSO based on Title VI.

Defendants' request for bifurcation is premised on the erroneous notion that Plaintiffs' claims against the Frederick County and the FCSO are predicated on proving an individual constitutional violation as a prerequisite.  *See* Mot. to Dismiss at 16 (collecting cases about *Monell* liability only after a predicate finding of a constitutional violation or statutory tort by individuals).  Their argument lacks merit in this case because in addition to constitutional claims, Plaintiffs are pursuing a Title VI discrimination claim directly against Frederick County and the FCSO.  The *Monell* liability analysis requiring a predicate finding of officer wrongdoing is inapplicable to such claims.  Additionally, Defendants ignore Plaintiffs' request for equitable

---

[9]      *Accord Deocampo v. City of Vallejo*, No. 06-01283, 2007 WL 161452, at *1 (E.D. Cal. June 4, 2007); *Rosa v. Hartford*, No. 3:00CV1367, 2005 WL 752206, at *4 (D. Conn. Mar. 31, 2005); *Monaghan v. SZS 33 Assocs., L.P.*, 827 F. Supp. 233, 245 (S.D.N.Y. 1993).

relief, including declaratory and injunctive relief, which also stem from direct liability claims against Frederick County and the FCSO.

Defendants' motion seeks to recast Plaintiffs' case as one involving only an isolated incident of misconduct. That mischaracterization ignores the facts and theories of liability actually asserted. Plaintiffs allege a pattern or practice of race-based discrimination and harassment against Latinx individuals believed to be immigrants by the FCSO. *See, e.g.*, Compl. at ¶¶ 55-67, 74-76. Facts related to that pattern or practice of race discrimination and harassment provide the basis for Plaintiffs' Title VI cause of action, which is directly against the FCSO and Frederick County. *See, e.g.*, Compl. at ¶¶ 99-103.

While this Court has sometimes allowed the use of bifurcation as a case management tool in select police misconduct cases in which the *only* way a plaintiff can prevail against a municipality is by first prevailing on an underlying constitutional claim, it has rejected bifurcation outright in cases such as this where a plaintiff states non-derivative claims directly against a municipality. *See, e.g.*, *Treadwell v. Prince George's County Health Dep't*, No. 13-0063, 2014 WL 3534006 (D. Md. Jul. 14, 2014) (denying motion for bifurcation for § 1983 and Title VII claims alleging sex discrimination and retaliation by county and individual officials, on grounds that the county, as the employer, was a necessary party on the Title VII claim); *Crystal v. Batts*, No. 14-3989, 2015 WL 8137660 at *1  (D. Md. Dec. 8, 2015) (concluding that bifurcation was not justified in trial of plaintiff's claims against police sergeant from trial of his claims against police commissioner and department).[10]  Indeed, based on *Treadwell, Crystal*, and similar cases,[11] a unified trial appears to be the norm in Title VI, Title VII, or Title IX cases.

---

[10]    *Accord Fall v. Indiana Univ. Bd. of Trustees,* 33 F. Supp. 2d 729, 735-36 (N.D. Ind. 1998) (rejecting, three times, defendants' motions for bifurcation as leading to duplication and inefficiency in case combining claims under Title VII, § 1983, and state law); *Maryland State*

**B.      Bifurcation will harm Plaintiffs, prolong litigation, and waste resources of the parties and the Court.**

Bifurcation is particularly inappropriate in this case because it would unduly prejudice Plaintiffs and unnecessarily prolong litigation and waste time and resources of the parties and the Court.  This Court granted bifurcation in *Santos*, upon the defendants' request in that case, based on arguments similar to those presented by Defendants in this case.   Of course, the similarities in bifurcation arguments are not surprising because this case and *Santos* share some of the same defendants and counsel, in addition to similar Fourth Amendment claims.   Yet, as it happened in *Santos*, and contrary to the defendants' early assertions otherwise in that case, bifurcation resulted in inefficient and drawn out proceedings because two different rounds of discovery were necessary for individual liability claims and municipal, or *Monell*, liability claims.  In fact, the defendants in *Santos* prolonged the litigation and sought to prejudice Ms. Orellana Santos upon remand with respect to her municipal liability claims by filing additional motions and fighting against additional discovery, even though it was necessary because *they* had requested bifurcation.[12]  Indeed, the defendants in *Santos* had the audacity to suggest that *they* would be

---

*Conference of NAACP Branches v. Dep't of Maryland State Police*, No. 98-1098 (D. Md. October 28, 2003) (rejecting request to bifurcate racial profiling and wrongful detention claims against individual officers from those against supervisors and the department, due to Title VI claim alleging pattern of racial profiling as to which the Department itself was the only proper defendant and "involves a distinct basis of asserted liability from §1983").

[11]      *See also, e.g.*, *Baynard v. Malone*, 268 F.3d 228 (4th Cir. 2001) (Title IX claim against School Board tried simultaneously with §1983 claims against school principal and superintendent); *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693 (D. Md. 2013) (allowing sex discrimination case brought by deputy sheriff and U.S. government intervenor against individual and entity defendants to proceed in a unified manner).

[12]      *See, e.g.*, *Santos v. Frederick County Bd. of Comm'rs*, No. 09-2978, 2017 U.S. Dist. LEXIS 600 (D. Md. Jan. 4, 2017) (granting the plaintiff's motion to take additional depositions of some of the same witnesses on remand with respect to municipal liability issues); *Santos*, 2016 U.S. Dist. LEXIS 78347, at *18 (denying motion to dismiss on remand and ordering additional discovery, as requested by the plaintiff); *Santos v. Frederick County Bd. of Comm'rs*, No. 09-2978, 2015 U.S. Dist. LEXIS 113776 (D. Md. Aug. 26, 2015) (granting motion to amend complaint on remand and suggesting additional discovery was warranted due to bifurcation).

prejudiced by additional discovery because relevant evidence in their possession, including "records and memories," might no longer exist.  *Santos*, 2015 U.S. Dist. LEXIS 113776, at *18.

Because the Fourth Amendment rights alleged to have been violated in this case are clearly established under controlling law, the case against bifurcation with respect to Ms. Medrano's Fourth Amendment claim is more compelling after *Santos*.  *See Santos*, 725 F.3d at 465 ("[S]tate and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law.").  As in *Santos*, Ms. Medrano's Fourth Amendment claim in this case is premised in large part on the deputies' acting pursuant to a written FCSO policy effectively requiring seizures and detentions of individuals based solely on federal civil immigration warrants or violations.  *See* Section III.B.1, *supra*. Thus, resolution of individual liability claims, is not likely to dispose of Plaintiffs' *Monell* claims because the right at issue is clearly established.

Furthermore, as explained below, bifurcation is even more likely to result in inefficiencies and undue prejudice to Plaintiffs in this case because Plaintiffs allege non-derivative Title VI claims against Frederick County and the FCSO, which overlap with Plaintiffs' other claims.

### 1.   Bifurcation at this stage would jeopardize Plaintiffs' ability to properly investigate and prove their claims.

In claims arising under § 1983, courts recognize the "danger that bifurcation may deprive plaintiffs of their legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action which they have brought into the court, replacing it with a sterile or laboratory atmosphere."  *Owensby v. Cincinnati*, 385 F. Supp. 2d 626, 666 (S.D. Ohio 2004) (quotations and citations omitted); *see also Deocampo*, 2007 WL 1614572 at *1 (denying bifurcation, holding that "[p]laintiffs have a right to sue whichever parties they wish, regardless

32

of whether the defendants, or even the court, may think that the inclusion of some defendants may be of little or no practical economic benefit to plaintiff"); *Cunningham v. Gates*, No. 96-2666, 2006 WL 2294877, at *2 (C.D. Cal. Aug. 2, 2006) ("[B]ifurcation would waste judicial resources and hinder the understanding of Plaintiffs' theory of the case.") (citations omitted).

Ms. Medrano and the RISE Coalition pled allegations against Frederick County and the FCSO that are independent, yet intertwined with their claims against individual defendants.  It would be patently unfair to Plaintiffs to deprive them of the opportunity, through discovery, to uncover evidence of how Defendants collectively contributed to the harms against them.  Judicial efficiency is not served by undermining Plaintiffs' ability to investigate and develop evidence about their claims.  *Cf. United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1154 (E.D.N.Y. 1992) (rejecting bifurcation as premature at pleadings stage due to need for Court to better understand intricacies of relationships among defendants).

**2.      Bifurcation would complicate discovery, prolong it, and cause duplication of efforts due to the extent of overlap among the Plaintiffs' claims.**

Courts granting bifurcation of *Monell* claims in § 1983 actions do so largely to prevent unnecessary discovery against municipal defendants.  *See, e.g.*, *Clements* 1992 WL 165814, at *1 (noting that bifurcation prior to discovery can eliminate the need for discovery as to specific claims or parties).  Bifurcation would not alleviate any such burden in in this case, however, because Plaintiffs' Title VI claims are not subject to the *Monell* framework, and because Plaintiffs request equitable relief.  Instead, bifurcation would result in duplicative discovery efforts, multiple trials, and it would unnecessarily prolong the litigation.  Moreover, given the overlapping nature of the evidence and claims in this case, bifurcation would be more likely to complicate, rather than simplify, the case.

33

In *Treadwell*, Judge Chasanow explained the significance of the distinct claims

Defendants fail to acknowledge in this case:

> Unlike the cases cited by the County, here the County is not simply an "inactive defendant," liable only if Plaintiff can first prove that Oladipo violated the constitutional right to be free from discrimination. Plaintiff also seeks to hold the County liable for Oladipo's acts under Title VII, for which it will be liable if Oladipo created a hostile environment because Oladipo was Plaintiff's supervisor.

*Treadwell*, 2014 WL 3534006, at *5.   As in *Treadwell*, Frederick County and the FCSO are

"active" defendants because of Plaintiffs' Title VI claims against them.

Similarly, in *Crystal*, Judge Bredar highlighted the plaintiff's allegations of involvement

of non-defendant employees/agents of the entity defendant as reflecting claims that were not

purely derivative of individual liability, but also "plausibly demonstrate[ing] consistent,

department-wide maltreatment."  *Crystal*, 2015 WL 8137660, at *1.  The same is true here, as

Plaintiffs' claims involve more than just the acts of the named individual defendants.

As a result, bifurcation would not provide any efficiency benefits in this case.  *Cf. id.*

("The Court is well aware of the usefulness of the bifurcation procedure when a municipality's

liability is derived wholly from a named defendant's liability, [but] Crystal's case … is not such a

case.").  Rather, in this case, even "if the claim[s] against [individual defendants] were decided

in [their] favor, … a substantial part of the case would remain unresolved."  *Id.* at *2.  Thus,

"[b]ifurcation would only succeed in drawing out the case instead of efficiently disposing of it,"

resulting in "duplication of discovery efforts and unwise use of judicial resources, not to mention

increasing the amount of time and money invested by the parties."  *Id.*

Furthermore, bifurcation with respect to Plaintiffs' *Monell* claims, particularly prior to

any discovery, would also result in inefficiencies in this case because there will almost certainly

34

be overlapping evidence offered in support of Plaintiffs' *Monell* and Title VI claims.  *Cf.*
*Schoolcraft v City of New York*, No. 10-6005, 2015 WL 5542770 (S.D.N.Y. Sept. 18, 2015)
(bifurcation unwarranted when case involves significant overlap between the evidence plaintiff
would offer in support of *Monell* claims and in support of other claims).

Defendants' proposal would have Plaintiffs conduct discovery sufficient to address the
questions of individual liability, but not the interrelated questions of how the individual
defendants' actions contributed to or were part of a broader chain of events.  Such an approach is
unworkable because it would require determining which evidence is related to Plaintiffs' Title VI
claim against Frederick County and the FCSO versus individual constitutional claims, even
though all pertain to the same subject matter.  Rather than limiting discovery disputes,
bifurcation risks duplication of effort—two searches of email systems, phone logs, policies and
procedures, officer performance evaluations, multiple depositions of the same witnesses, etc.

## CONCLUSION

For the reasons set forth herein, Plaintiffs Ms. Medrano and the RISE Coalition
respectfully request that the Court deny Defendants' Motion in its entirety.

Dated: December 20, 2019

                                                              /s/

Nicholas T. Steiner, Esq. (Bar No. 19670)
Deborah A. Jeon, Esq. (Bar No. 06905)
**AMERICAN CIVIL LIBERTIES UNION OF MARYLAND FOUNDATION**
3600 Clipper Mill Road, Suite 350
Baltimore, MD 21211
Telephone: (410) 889-8550
steiner@aclu-md.org
jeon@aclu-md.org


John C. Hayes, Jr. (Bar No. 01936)
Brian J. Whittaker (Bar. No. 04414)
**NIXON PEABODY LLP**
799 9th Street, N.W., Suite 500
Washington D.C.  20004
(202) 585-8000 (phone)
(866) 814-2042 (facsimile)
jhayes@nixonpeabody.com
bwhittaker@nixonpeabody.com

*Counsel for Plaintiffs*

36

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of December, 2019, a copy of the forgoing

Opposition was filed with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following recipients:

        Daniel Karp
        Kevin Karpinski
        Suite 1850
        120 E. Baltimore Street
        Baltimore, Maryland 21202
        brunokarp@bkcklaw.com
        kevin@bkcklaw.com

        *Counsel for Defendants*

                */s/Brian J. Whittaker*
                Brian J. Whittaker