**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SARA HAIDEE ALEMAN MEDRANO, et al. | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No: 1:19-cv-02038-RDB |
| | * | |
| FREDERICK COUNTY SHERIFF CHARLES JENKINS, et al. | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO BIFURCATE</u>**

Frederick County Sheriff Charles A. Jenkins, in his official and individual capacities, Frederick County Deputy Sheriff Brian M. Mothershead, in his official capacity, Frederick County Deputy Sheriff Randy C. Barrera, in his official capacity, Frederick County, Maryland and Frederick County Sheriff's Office, Defendants, by KARPINSKI, COLARESI & KARP, P.A., DANIEL KARP and KEVIN KARPINSKI, their attorneys, file this Reply to Plaintiffs' Opposition to their Motion to Dismiss or, in the alternative, to Bifurcate.

Plaintiffs begin their Opposition to Defendants' Motion to Dismiss or, in the alternative, to Bifurcate by pointing out that Defendants have conceded that Plaintiffs have stated plausible individual capacity claims against Frederick County Deputy Sheriffs Mothershead and Barrera. Defendants have done so because they discern no proper purpose in asserting baseless defenses. While Plaintiffs' claims against Deputies Mothershead and Barrera will likely prove to be meritless, there is no doubt that the Plaintiffs have at least properly pled individual capacity claims against them.  The fact that these Defendants filed Answers, rather than Motions to Dismiss, hardly

counts in Plaintiffs' favor with respect to the claims which have been opposed by the Motion to Dismiss or to Bifurcate.

Plaintiffs' opposition contains a statement of facts.  This recitation adds nothing to the analysis of Defendants' motion.  The allegations of the Complaint speak for themselves.  But Plaintiffs' assertion, at ECF 19, p. 14, that the experiences of Mr. A. G., Roxanna Orellana Santos, and other unnamed individuals are similar examples of Latinx individuals being stopped, detained, and arrested for no legitimate reason is in all probability not likely the case.  The specific facts and circumstances concerning Mr. A. G. and other "unnamed" individuals are not set forth in the Complaint, and the only reason to believe that the circumstances are plausibly related is because Plaintiffs say that they are.  However, with regard to Ms. Santos, the situation is plainly not the same, as discussed in detail in Defendants' memorandum in support of their motion, ECF 11-1, pp. 3-4.

Plaintiffs are correct that there is no reason to believe that the Court lacks personal jurisdiction over all of the Defendants.  See ECF 19 at p. 17.  Defendants' citation to Rule 12(b)(2) of the Federal Rules of Civil Procedure, ECF 11 at p. 1, was an error.  The intended citation was to Rule 12(b)(1), and relates to the fact that if, as Defendants had argued, RISE lacks standing, no justiciable controversy has been stated, and the Court therefore lacks subject-matter jurisdiction over that claim.  See, e.g., Spokeo, Inc. v. Robins, ___ U.S. ___, 136 S.Ct. 1540 (2016).  Standing is a pre-requisite to federal subject matter jurisdiction.  Marshall v. Meadows, 105 F.3d 904, 905-6 (4th Cir. 1997).

Plaintiffs next argue that they have alleged a plausible claim against Sheriff Jenkins in his individual or personal capacity.  Specifically, they contend that they have asserted a "supervisory liability" claim against him under the principles discussed in Shaw v. Stroud, 13 F.3d 791 (4th Cir.

1994).  But it is clear even under the most charitable reading of the Complaint that a supervisory liability claim was neither intended nor actually stated. Plaintiffs' assertion to the contrary is an invention of counsel, to try to hold the Sheriff in as a Defendant. Paragraph 6 of the Complaint alleges that Sheriff Jenkins signed the 287(g) Agreement in his capacity as Sheriff. Paragraph 60 alleges that, as Sheriff of Frederick County, he permitted and required Deputies to arrest individuals when they would become aware of an outstanding warrant, without any distinction between or among different types of warrants.  ECF 1, pp. 4, 15.  This is the essence of an alleged Monell claim.  As Defendants previously argued, there are no allegations anywhere in the Complaint that Sheriff Jenkins was involved in any way in the July 7, 2018 traffic stop at issue, or that he had any other personal involvement in any relevant act or circumstances.  A supervisory liability claim was simply not pled, either explicitly or implicitly, in the Complaint.

        To establish supervisory liability, a supervisor must have actual or constructive knowledge that his subordinate was engaged in conduct that posed pervasive and unreasonable risk of constitutional injury; the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or a tacit authorization of the alleged offensive practices; and an affirmative causal link must exist between the supervisor's inaction and the particular constitutional injuries suffered.  Shaw, 13 F.3d at 799.  Shaw itself illustrates the proper application of supervisory liability.  There, Officer Morris shot and killed an unarmed individual.  In the five years Sergeant Stroud had been Officer Morris' sergeant, Stroud received several complaints that Morris had used excessive force, used a racial epithet, had been rude and unresponsive to citizen complaints, and had instituted a disproportionally high number of assault charges against arrestees. Stroud, acting as Morris' line supervisor, laughed off, ignored, and otherwise failed to treat the complaints seriously or to investigate them.

Sergeant Smith replaced Stroud as First Sergeant approximately fourteen months before the shooting at issue in the case.  After Smith received a complaint from a judge about Morris, Sergeant White, Morris' immediate supervisor, informed Smith that he had counseled Morris. Smith and a captain decided that the proper course of action would be to monitor Morris' job performance and conduct more closely in the future.  As a result, Smith accompanied Morris on patrol on at least two subsequent occasions.  After receiving an additional complaint about Morris from a local defense attorney, Smith assigned White, the immediate supervisor, to attend the criminal trial to hear all of the evidence for himself.  In response to a discourtesy complaint, Smith was advised by White that Morris had been counseled to be more courteous.  Three weeks before the shooting at issue, Morris allegedly beat an individual by the name of Townes, fracturing his skull.  Smith met Morris at the hospital when Morris took Townes in for treatment.  There was no evidence that Townes made it clear to Smith that he was upset about his treatment by Morris, Townes did not file a complaint, and Smith did not launch an investigation.

After discovery, the district court denied Morris' motion for summary judgment with respect to the primary claims against him. It also denied Stroud's motion for summary judgment, reasoning that Stroud exhibited deliberate indifference because he ignored the complaints of at least three witnesses who alleged that Morris had beaten him during an arrest.  However, the district court granted summary judgment on all claims against Smith, finding that Smith exhibited no deliberate indifference to merit liability.  According to the district court, Smith pursued complaints against Morris even though they were not formal.  It held that at most, Smith's response was negligent, not deliberately indifferent.

Following interlocutory appeals, the Fourth Circuit affirmed.  It analyzed the evidence of Morris' supervisors' responses to the complaints they had received about Morris.  The Court

emphasized that the Plaintiff must demonstrate an affirmative causal link between the supervisor's action or inaction, and the harm suffered by the Plaintiff. The Fourth Circuit held that there was ample evidence that Stroud had exhibited deliberate indifference. Although the causation prong presented a more difficult question, the Court concluded that the causal link in §1983 cases is analogous to proximate cause, and that there was sufficient evidence from which a reasonable jury could find that there was a causal link between Stroud's inaction and the shooting at issue. With regard to Smith, the Court held that Smith's actions may not have been the most effective, and although he might have done more, his conduct simply did not exhibit the tacit authorization of or deliberate indifference to constitutional injuries required for §1983 supervisory liability.

The <u>Shaw</u> court noted that the principle of supervisory liability is firmly entrenched in Fourth Circuit precedent, citing, among other cases, <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984). In <u>Slakan</u>, supervisory liability judgments against the Warden, the Director of Prisons, and the Secretary of Corrections were affirmed. The Warden was responsible for day to day operations of the prison and for the training and conduct of guards. He admitted that he knew of and had condoned the improper use of force against inmates on at least seven occasions, and that on at least one occasion, he had personally approved the use of a high pressure hose against an inmate who was handcuffed and confined in a cell by himself. The Director was also responsible for day to day operations of the prisons, and was aware that water hoses and tear gases were routinely being used against inmates locked in their individual cells. He too admitted specific knowledge about the seven incidents that immediately preceded the attack at issue in that case, and indicated that he had personally approved of the use of force in each case. He conceded that he had opposed implementing recommendations concerning the need for tighter controls on the use of high pressure hoses against cell-confined inmates, and that he had never issued orders placing

restrictions on the use of hoses against inmates, despite actual knowledge about the widespread reliance on the practice.  Finally, with regard to the Secretary of Corrections, the Court held that he indisputably knew that water hosing was used as a routine control measure, and he failed to exercise his statutory authority to end the indiscriminate use of high pressure water hoses against inmates securely housed in one-man cells.  In each case the defendant was functionally the jail guards' supervisors.

Plaintiffs rely on Baynard v. Malone, 268 F.3d 228 (4th Cir. 2001) and Farmer v. Ramsay, 41 F.Supp.2d 547 (D.Md. 1999) to bolster their assertion that they have a supervisory liability claim against Sheriff Jenkins.  Neither case supports their argument.  In Baynard, a school principal had actual or constructive knowledge of the risk of sexual molestation/pedophilia by an elementary school teacher and acted with deliberate indifference in failing to respond to mounting evidence of misconduct.  In Farmer, officials knew of and personally participated in a discriminatory admissions policy which caused the applicant harm.  Neither case stands for the proposition that everyone "in the chain of command" faces potential supervisory liability for implementing, or failing to prevent, an allegedly unconstitutional policy.

Plaintiffs point to the fact that they have requested punitive damages against Sheriff Jenkins in his personal capacity.  That is indeed the case, but of course says nothing about whether the Plaintiffs have actually pled a supervisory liability claim against him. The purported supervisory liability claim is in fact a Monell claim.

To the extent cases can be found in which a high ranking official is held in on a theory of supervisory liability based solely on the implementation or non-implementation of a policy, custom or practice, and not personal misconduct tied directly to the underlying constitutional violation, it was because the impermissible conflation of a Monell claim with a claim of individual

capacity, supervisory liability, was simply not challenged.  In this case, Plaintiffs have taken pains to assert that over the years, Sheriff Jenkins' purported discriminatory animus against certain groups of immigrants, led to a policy, custom and practice of discriminatory policing.  Once again, this is an attempted Monell claim, and not a proper supervisory liability claim.  If Plaintiffs are permitted to fashion a supervisory liability claim out of what is in reality a Monell claim, the distinction between official capacity and individual capacity claims will become attenuated to the point of disappearance. Under Plaintiffs' theory, a high ranking official can always be sued in his personal or individual capacity if he can be deemed a supervisor, even if he is a supervisor only in the sense of being a policy maker. That is not consistent with Fourth Circuit precedent.

If and to the extent the Court determines that Plaintiffs have indeed pled an individual capacity supervisory liability claim against Sheriff Jenkins, Defendants submit that, like the Monell claim, which it clearly resembles, it should be bifurcated for all purposes of discovery and trial.  In all likelihood, trial of the individual liability claims against Deputies Mothershead and Barrera will resolve most, if not all, of the issues presented by this case, and there is no reason why what should be a relatively short and straight forward trial concerning the Deputies' individual liabilities should become bogged down in the more expansive issues of policy, custom and practice.

Plaintiffs next argue that they have pled plausible Monell claims in Counts I and II on "multiple plausible theories."  ECF 19, p. 22.[1]  Defendants demonstrated the contrary in their

---

[1] Plaintiffs insist that they have pled plausible Monell claims against not only Sheriff Jenkins in his official capacity and against Frederick County, but also against Deputies Mothershead and Barrera in their official capacities, but offer no rebuttal to Defendants' previous arguments that any such claims are meaningless surplusage and duplicative of any Monell claims against Sheriff Jenkins and Frederick County.

previous Memorandum, ECF 11-1, pp. 10-13, and do not believe that belaboring the issue further would be productive.

Plaintiffs' insistence that Frederick County is a proper Defendant both with respect to potential <u>Monell</u> liability and Title VI liability is puzzling, in light of Judge Blake's clear holding in <u>Santos v. Frederick County Board of Commissioners</u>, 346 F.Supp. 3d 785, 800 (D.Md. 2018) that even though Frederick County will bear ultimate financial responsibility for any liability imposed on Sheriff Jenkins, Frederick County will not be liable in its own right because it does not have authority to intervene in the Sheriff's performance of his state constitutionally authorized law enforcement duties generally, or immigration enforcement in particular. Plaintiffs fail to explain why this authoritative decision is not determinative of the issue of Frederick County's (direct) potential liability here. Simply stated, Frederick County is not a proper Defendant. Any liability, and any relief, which Plaintiffs can establish can be afforded against the individual deputies in their individual capacities, and against Sheriff Jenkins in his official capacity.

Conceding nothing, even when they should do so, Plaintiff also insist that Frederick County Sheriff's Office is a proper Defendant even though it is not a legal entity capable of suing or being sued, under the authority previously cited by Defendants at ECF 11-1, pp. 6-7. Plaintiffs cite no authority to the contrary.[2] And, once again, any liability, and any relief, which Plaintiff can

---

[2] Plaintiffs do cite <u>LaPier v. Prince George's County</u>, 2011 WL 4501372 (D.Md. September 27, 2001), for the proposition that dismissal prior to discovery would be improper. There, the Court dismissed §1983 and ADA claims against the Prince George's County Police Department, stating "Under Maryland law, it is well established that county police departments are agents of the county and are not to be treated as separate legal entities." <u>Id.</u> at *3. The Court also held that it would be premature to determine whether plaintiff could sue the police department under the Rehabilitation Act, referring to unsettled case law under that Act. When plaintiff filed his amended complaint, he did not name the Police Department as a Defendant. <u>LaPier v. Prince George's County</u>, 2012 WL 1552780*1 (D.Md. April 27, 2012). In any event, this case does not involve the Rehabilitation Act.

establish can be afforded against the individual deputies in their individual capacities, and against Sheriff Jenkins in his official capacity. Not only is the Frederick County Sheriff's Office not a legal entity and not a proper Defendant, but there is no proper purpose to try to assert that it is.

Plaintiffs argue that because Ms. Medrano has standing, the Court need not consider whether the organizational plaintiff has standing, citing <u>LaUnion Del Pueblo Entero v. Ross</u>, 353 F. Supp. 3d 381, 390 (D.Md. 2018).  Defendants take the point, and will not pursue an objection at this time to the assertion that RISE has standing.

Plaintiffs also argue that Defendants have not established that bifurcation is appropriate here, and that the burden is on the Defendants to do so.  Describing Defendants as having the "burden of proof" that bifurcation is appropriate, based on a passing statement to that effect in a single, unreported 1992 case from this district, ECF 19, p. 37, <u>Clements v. Prince George's County</u>, 1992 WL 165814*1 (D.Md. June 30, 1992), is a significant overstatement. Rule 42(b) of the Federal Rules of Civil Procedure, which is the basis for a bifurcation order neither states nor implies that the party seeking bifurcation has the burden of proof in the traditional meaning of that phase:

> For convenience, to avoid prejudice, or to expedite and economize, the Court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims.

District courts have broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused.  <u>Tserkis v. Baltimore County</u>, 2019 WL 4932596*3 (D.Md. October 4, 2019).  In <u>Tserkis</u>, Judge Ellen L. Hollander provided a comprehensive overview of the considerations for and the salutary effects of bifurcation in § 1983 cases since it became the norm in this district beginning with <u>Marryshow v. Town of Bladensburg</u>, 139 F.R.D. 318 (D.Md.1991), including:

(1) if there is no initial finding that a government employee violated a plaintiff's constitutional rights. . . no subsequent trial of the municipality is necessary.

(2) bifurcation might spare the parties from expending valuable resources in discovery because resolution of the claims against the individuals may obviate the need to litigate the <u>Monell</u> claim.

(3) bifurcation prevents the potential prejudice to defendants that may result from the introduction of inflammatory evidence concerning a municipality's policies, practices or customs.

(4) bifurcation best serves judicial economy by avoiding time and expenses related to <u>Monell</u> claims until they have been established the existence of an underlying constitutional violation.

(5) the risk of unfair prejudice to individual defendants is unlikely to be adequately avoided or mitigated by limiting instructions.

(6) it narrows the issues for trial, leading to lower costs, without any unfair prejudice to the plaintiff.

Plaintiffs argue that bifurcation should not be applied here because they have alleged a non-derivative claim against Frederick County and the Frederick County Sheriff's Office, namely, the Title VI claim in Count III.[3]  But, just as Plaintiffs would have to prove an unconstitutional policy, custom or practice with respect to municipal liability in Counts I and II, they would have to prove systemic race or national origin discrimination in Count III.  Evidence of alleged systemic discrimination, apart from the incident involving Ms. Medrano, in a federally funded program (Count III) will of course be every bit as prejudicial to the individual Defendants as the same evidence, of an unconstitutional policy, custom or practice, in Counts I and II.  It is primarily the prejudicial evidence, rather than different theories (derivative or non-derivative) of liability that justify and, in Defendants' view require, bifurcation here.

Recognizing that bifurcation is the norm in §1983 claims in this district involving alleged excessive force and/or false arrest, and potential <u>Monell</u> liability, Plaintiffs cite <u>Treadwell v. Prince</u>

---

[3] As demonstrated elsewhere, neither Frederick County nor the Frederick County Sheriff's Office are proper Defendants here.  They are the only Defendants named in Count III.  The suggestion that entity liability is not purely derivative is therefore a red herring, in that Plaintiffs only viable avenues are recovery are indeed derivative.

George's County Health Dep't., 2014 WL 35340008 (D.Md. July 14, 2014), and Crystal v. Batts, 151 F.Supp. 3d 626 (D.Md. 2015) in support of a different result. But neither was a police liability case like the present one; both were employment cases. The Court denied defense motions to bifurcate there because in both cases the municipal defendants' potential liability was not based solely, or even primarily, on the liability of a named defendant. In Crystal, the Court found that the complaint included many allegations of wrongful conduct by a considerable number of officers or officials, apart from the allegations against the individual defendant. In Treadwell, the County was potentially liable to the plaintiff both under §1983 (if the named defendant was found liable, and if he acted pursuant to a County policy, custom or practice) and Title VII (vicarious liability for unlawful employment practices by another employee, unwelcome sexual language, sexual advances and sexual assaults). In both cases the Court ruled that bifurcation would inevitably prolong and complicate, rather than shorten and simplify, discovery and trial.[4]

Next, Plaintiffs argue that bifurcation would jeopardize their ability to properly investigate and prove their claim. ECF 19, pp. 40-41. This syllogism is patently false. Ms. Medrano's claims against the individual deputies are primary. The Monell and Title VI claims cannot proceed without proof that Ms. Medrano's constitutional rights were violated.[5]  See Judge Hollander's discussion in Tserkis, 2019 WL 4932596*3-4. Plaintiffs will suffer no unfair prejudice by being required to defer investigation and trial of the Monell and Title VI claims until it is determined

---

[4] In neither case did the Court articulate any particular concern, or lack of concern, about prejudice to the individually named defendant. But the potential for prejudice against the individual defendants was a core concern in Marryshow, and the dozens of bifurcation claims which followed it. It is also a core concern here.

[5] But even if they could proceed without such proof, there is no reason why their additional claims should be investigated, via discovery, and litigated by motion and/or trial, before Ms. Medrano's claims against the deputies are resolved. Logically, and consistent with precedent in this District, the threshold claim should be litigated first.

whether the linchpin for them – the individual deputies' liability to Ms. Medrano – can even be established.  And just as importantly, Plaintiffs' argument that they will be prejudiced entirely ignores the fact (and not just the possibility) that Deputies Mothershead and Barrera will themselves be seriously, and likely fatally, prejudiced by evidence unrelated to the Medrano incident and admissible only with respect to the <u>Monell</u> and Title VI claims.

In similar vein, Defendants disagree with Plaintiffs' final, and related, argument, that <u>Monell</u> claims are bifurcated primarily to prevent unnecessary discovery, and that the bifurcation request here should be denied or at least deferred because it would unfairly complicate, prolong, and cause duplication of discovery.  ECF 19, pp. 41-43.  Avoiding waste of time and resources is certainly among the reasons for bifurcation, but Defendants submit avoiding unfair prejudice to the individual Defendants is an even more important consideration.  <u>See</u> <u>Tserkis</u>, 2019 WL 4932596*5:

> Equally important, bifurcation prevents the potential prejudice to individual defendants that may result from the introduction of inflammatory evidence concerning the municipality's policies, practices and customs.  This is especially true in excessive force cases, where the <u>Monell</u> evidence would include "prior incidents of police brutality and policymakers' reaction to such 'incidents.'" Although such evidence "is relevant under the <u>Monell</u> analysis," it might unfairly bias the jury as to the liability of the individual defendants.

(Internal citations omitted.)  Furthermore, the question of bifurcation is usually appropriately raised <u>prior</u> to discovery.  <u>See and compare</u> <u>Marryshow</u>, 139 F.R.D. at 319 and <u>Payne v. City of Laurel, Maryland</u>, 2008 WL 11363692 *3-4 (D.Md. February 19, 2008).  Should Ms. Medrano prevail, and if for some reason Plaintiffs cannot obtain full relief in that proceeding, the issues of <u>Monell</u> and Title VI liability can then be litigated.  There will be no duplication of effort because Sheriff Jenkins and/or Frederick County will be bound by the resolution of Ms. Medrano's claims

against the individual deputies. <u>Marryshow</u>, 139 F.R.D. at 320.[6]  There is simply no unfairness or prejudice to the Plaintiffs in Defendants' alternate bifurcation request here, and if the Defendants' motion to dismiss is not granted, the referenced claims should be bifurcated for all purposes of discovery and trial.[7]

Respectfully submitted,

KARPINSKI, COLARESI & KARP, P.A.

BY: _____/s/_____
DANIEL KARP, #00877
CPF No: 7612010190
brunokarp@bckclaw.com

_____/s/_____
KEVIN KARPINSKI, #11849
CPF No: 9312150114
Kevin@bckclaw.com
Suite 1850
120 East Baltimore Street
Baltimore, Maryland 21202-1617
410-727-5000
410-727-0861 (fax)
*Attorneys for Defendants*

---

[6] Sheriff Jenkins, Frederick County, and "Frederick County Sheriff's Office" agree that they will be bound by resolution of Ms. Medrano's claims against Deputies Mothershead and Barrera.

[7]  Defendants note that Plaintiffs end their argument by additional citations to <u>Treadwell</u> and <u>Crystal</u>.  As discussed above, the situations in those employment cases are not analogous to the situation here.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of January 2020, a copy of the foregoing was

electronically filed, with notice to:

Nicholas T. Steiner, Esquire
Deborah A. Jeon, Esquire
American Civil Liberties Union of
  Maryland Foundation
3600 Clipper Mill Road
Suite 350
Baltimore, Maryland 21211

John C. Hayes, Jr., Esquire
Brian J. Whittaker, Esquire
Nixon Peabody LLP
799 9th Street, N.W.
Suite 500
Washington, D.C.  20004

                            /s/ Daniel Karp
                        Counsel for Defendants